NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4888-14T1

EMIGRANT MORTGAGE COMPANY,
INC.,

 Plaintiff-Respondent,

v.

KAREN COSTA,

 Defendant-Appellant.
____________________________

 Telephonically argued May 24, 2017 – Decided September 18, 2017

 Before Judges Nugent, Currier, and Geiger.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Burlington County, Docket
 No. F-043930-08.

 Roosevelt N. Nesmith argued the cause for
 appellant.

 Carol Ann Slocum argued the cause for
 respondent (Klehr Harrison Harvey Branzburg,
 LLP and Hartlaub, Dotten & Mezzacca, PC,
 attorneys; Ms. Slocum, Michael D. Mezzacca and
 Robert P. Johns, III, on the brief).

PER CURIAM

 The New Jersey Home Ownership Security Act of 2002, N.J.S.A.

46:10B-22 to -35 (HOSA), authorizes a homeowner who has borrowed
money for home improvements to assert against the loan creditor

all affirmative claims and defenses the borrower may have against

the home improvement contractor if the contractor arranged the

loan. In the case now before us, a home improvement contractor,

with the knowing or unknowing assistance of a mortgage broker and

title company, swindled defendant Karen Costa out of money she

borrowed from plaintiff Emigrant Mortgage Company, Inc., to pay

for home improvements.1 Emigrant then filed an action to foreclose

on Costa's home.2 Costa asserted affirmative defenses and

counterclaims against Emigrant.

 On cross-motions for summary judgment, the trial court

dismissed the consumer fraud claim Costa had purportedly asserted

against Emigrant under HOSA for the consumer fraud committed by

the home improvement contractor, the mortgage broker, and the

title company. The court determined Costa had not pleaded or

otherwise raised HOSA and further determined her HOSA claim was

barred by the applicable statute of limitations. The court also

dismissed several of Costa's affirmative defenses and three other

counts of Costa's counterclaim. Following the close of plaintiff's

1
 Costa has since changed her name.
2
 Emigrant actually assigned the note and mortgage to an affiliate,
Emigrant Residential, LLC. The assignment is not at issue on this
appeal.

 2 A-4888-14T1
proofs at trial, the court dismissed Costa's remaining affirmative

defenses and claims against Emigrant.

 We conclude Costa pleaded in her complaint the elements of a

consumer fraud claim authorized by HOSA, even though she did not

cite the statute. Under those circumstances, and considering our

Legislature's strong pronouncement of HOSA's policy underpinnings,

N.J.S.A. 46:10B-23, the trial court should not have dismissed her

claim on summary judgment. We further conclude the trial court

erred by dismissing all Costa's remaining claims at the close of

her proofs at trial. For these reasons, we reverse those parts

of the court's orders barring Costa from asserting claims through

HOSA, vacate the foreclosure judgment, and remand for further

proceedings.

 This action's procedural history began when Emigrant filed a

foreclosure action against Costa on November 5, 2008. Defendant

did not plead or otherwise respond to the complaint, so a default

was entered against her. Thereafter, plaintiff obtained final

judgment and a writ of execution. Following numerous stays or

postponements of sheriff's sales, mediation, Costa's filing of

Chapter 13 bankruptcy petitions, and a sale of Costa's home, the

trial court set aside the sheriff's sale and vacated the final

default judgment.

 3 A-4888-14T1
 Costa filed an answer, twelve affirmative defenses, a

counterclaim, and a third-party complaint against the home

improvement contractor, Full Spectrum Remodeling; Professional

Abstract and Assurance Title Company, Inc.; and Merit Finance, a

mortgage broker. In her counterclaim's seven counts, Costa pleaded

causes of action for consumer fraud, common law fraud, negligence,

breach of contract, predatory lending, violation of the Truth in

Lending Act, and violation of the Truth in Consumer Contract

Warranty and Notice Act.

 Following discovery, Emigrant filed a motion for summary

judgment. Costa filed opposition and a cross-motion for summary

judgment. On May 30, 2014, the court entered an order and

memorandum of decision granting Emigrant's motion in part. The

court found that Emigrant had established the elements of a prima

facie case for foreclosure, dismissed six of Costa's affirmative

defenses, and dismissed her counterclaim counts alleging predatory

lending, violation of the Truth in Lending Act, and violation of

the Truth in Consumer Contract Warranty and Notice Act. The court

denied Emigrant's motion as to the remaining counts after

determining genuinely disputed facts existed as to whether an

agency relationship existed between Emigrant and either Merit

Finance or Professional Abstract. The court denied Costa's cross-

motion for summary judgment.

 4 A-4888-14T1
 Emigrant filed a motion to reconsider, or, alternatively,

clarify that the court's May 30, 2014 order precluded defendant

from asserting a consumer fraud claim against it as permitted by

HOSA. On October 24, 2014, the trial court issued an order and

memorandum of decision barring Costa from asserting a consumer

fraud claim against Emigrant based on the provisions of HOSA.

 The case proceeded to trial on the remaining counts. At the

close of Costa's case, Emigrant moved for judgment. The court

granted the motion. The court entered default judgments against

the third-party defendants. This appeal followed.

 Construed in the light most favorable to Costa, the party

opposing Emigrant's summary judgment motion, Davis v. Brickman

Landscaping, Ltd., 219 N.J. 395, 406 (2014), the motion record

establishes the following facts. On September 6, 2007, after

responding to a newspaper advertisement for home improvement work

and a loan for repair and remodeling, Costa entered into a home

improvement installment contract with Full Spectrum. Full

Spectrum's representative, Bill Markum ("Markum"), promised to

arrange financing for the home improvements. The contract price

for the work was $83,649.

 The next day, Costa received an unsolicited telephone call

from Merit Finance, a company she had never heard of. Merit

Finance was already aware of her meeting with Full Spectrum and

 5 A-4888-14T1
asked her questions for a mortgage loan application. Several days

later, Merit Finance submitted to Emigrant a loan application

package that included documents purportedly signed by Costa on

September 7, 2007 — the day she spoke to a person from Merit

Finance on the telephone. According to Emigrant, it had entered

into a "Broker Direct Agreement" with Merit two years earlier, but

Merit had produced only a handful of applications.

 In any event, after receiving an appraisal of Costa's home

as well as a closing service letter and title insurance commitment

from Professional Abstract and Assurance Title Co., ("Professional

Abstract"), Emigrant approved the loan. Emigrant sent Merit

documents, which Merit returned after Costa purportedly signed

them. Thereafter, on October 26, 2007, Emigrant extended a

mortgage loan to Costa in the principal amount of $115,000. Costa

executed a note and a mortgage, which was duly recorded.

 Meanwhile, becoming increasingly concerned about the amount

of the home improvement contract, Costa had her husband call Full

Spectrum and ask for a detailed breakdown of the work. On

September 21, 2007, Full Spectrum's Vice President, Josh

Schneider, wrote to Costa and said, among many other things, Full

Spectrum did not charge Costa for "my personal efforts to obtain

the mortgage loan." A few weeks later, a Full Spectrum

representative notified Costa the loan had been approved and Full

 6 A-4888-14T1
Spectrum would start the work the next day, October 19, 2007. Full

Spectrum began the work as promised, but never took out a permit.

 The following week, a woman from Professional Abstract

telephoned Costa, said the loan had been approved, and asked to

come to Costa's home the next day for a closing. The next day,

Debra Davis from Professional Abstract appeared at Costa's home,

where Costa signed numerous closing documents. Davis instructed

Costa to come to Professional Abstract's Pennsylvania office five

days later to get the loan check. On the scheduled day, Costa

received a check for $23,056.87 rather than the full loan balance.

She learned the remaining money had been disbursed to Full

Spectrum.

 A day or two later, someone from Full Spectrum appeared at

her house and demanded she endorse three checks or he would

immediately pull his men off the job. She complied. Full Spectrum

cashed the checks but did not finish the work. Their workers left

the site on March 24, 2008, and never returned.

 Costa defaulted on the loan and Emigrant commenced the

foreclosure action in November 2008. After Costa filed a complaint

with the New Jersey Department of Banking and Insurance, she

learned most of the documents generated during the mortgage

application process had been forged. The forged documents included

 7 A-4888-14T1
a Refinance Certification that represented that no part of the

loan would be used to finance a home improvement.

 In the first sixty-three paragraphs of her counterclaim and

third-party complaint, Costa set forth the factual allegations on

which she based her counterclaim and third-party complaint. She

alleged Emigrant and "its agents," Full Spectrum, Merit Finance,

and Professional Abstract, "acting in concert, employed unfair

trade practices to deceive [Costa] into engaging in a sham home

improvement financing transaction." She further alleged "Full

Spectrum represented that they would arrange financing for the

home improvements" and Full Spectrum arranged for Merit Finance

to process her loan application. Lastly, she summarized the facts

she later developed on the summary judgment record as set forth

above.

 In her counterclaim against Emigrant, Costa alleged in the

first count the conduct of Emigrant, Full Spectrum, Merit Finance,

and Professional Abstract constituted multiple violations of the

Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. Costa also

alleged that "as a direct result of the conduct of Emigrant, [she]

suffered an ascertainable loss."

 In the counterclaim's third count, Costa alleged, among other

things, Emigrant breached its duty of good faith and fair dealing

"by failing to employ appropriate managerial control over the loan

 8 A-4888-14T1
closing process." In the sixth and seventh counts, Costa

specifically identified and alleged violations of the Truth in

Consumer Contract Warranty and Notice Act and violations of the

Truth in Lending Act.

 In the same pleading, Costa asserted a third-party complaint

against Full Spectrum, Merit Finance, and Professional Abstract.

She repeated by reference her factual allegations and then pleaded

five causes of action against each third-party defendant:

violations of the CFA, common law fraud, breach of contract,

predatory lending, and violation of the Consumer Contract Warranty

and Notice Act.

 Costa argued in opposition to Emigrant's summary judgment

motion, and in support of her own, that, among other reasons for

denying Emigrant's motion, Emigrant was liable for the acts and

omissions of the third-party defendants under HOSA and under

principles of agency. Emigrant responded that Costa had not raised

HOSA in her counterclaim and third-party complaint. Emigrant

argued there was no evidence to support Costa's agency theories

of liability, Costa did not address her affirmative defenses in

her motion pleadings, and Costa produced insufficient proofs to

support any of her counterclaims against Emigrant.

 The court granted Emigrant's motion in part. The court

found Costa had established no genuine issues of material fact to

 9 A-4888-14T1
support six of her affirmative defenses or her counterclaims

alleging predatory lending and violation of the Truth in Lending

and violations of the Truth in Consumer Contract Warranty and

Notice Acts. The court also rejected Costa's HOSA arguments,

stating

 to the extent [Costa] tries to raise issues
 under [HOSA, she] does not contend that this
 is a high cost loan and in any event based
 upon the [p]laintiff's arguments, it was not.
 A violation of HOSA was not even raised in
 these pleadings. Finally, the statute of
 limitations with respect to New Jersey HOSA
 has run.

 The court denied Emigrant summary judgment on Costa's

remaining affirmative defenses and counterclaim counts, finding

that the disposition of those claims depended on whether Emigrant

had an agency relationship with the third-party defendants, an

issue which depended upon resolution of genuinely disputed

material facts.

 Emigrant moved for clarification of the court's decision.

Costa opposed the motion. The court reiterated its previous ruling

and therefore clarified "that the [HOSA] claim cannot be raised

under the CFA. Any CFA claim based on [HOSA] violations is

precluded from trial."

 The case proceeded to trial on Costa's agency theory of

liability against Emigrant and on the remaining counts of the

 10 A-4888-14T1
third-party complaint against the third-party defendants. Costa

adduced essentially the same proofs she had established on the

summary judgment motion record. The court dismissed defendant's

remaining claims at the close of Costa's case pursuant to Rule

4:37-2(b).3

 The court analogized the facts regarding Professional

Abstract to a condominium complex hiring an independent snow

removal company, telling the snow removal company where to clean

and what to salt. Notwithstanding such directives, the snow

removal company remains an independent contractor. The court

noted, "here Emigrant doesn't select Professional [Abstract], and

the question is . . . the control that Emigrant has over

Professional [Abstract], is that analogous to what a condominium

association has over snow removal people or is it something more."

The court could not "find a way . . . to distinguish that

interaction with the Emigrant – Professional Abstract

interaction."

 The court concluded, "I don't think that the evidence and all

the legitimate inferences therefrom could sustain a judgment that

Professional [Abstract] is an agent for Emigrant, and absent that

. . . there's no inculpation of Emigrant for Professional

3
 The judge who decided the cross-motions for summary judgment
was not the trial judge.

 11 A-4888-14T1
Abstract's negligence. So I find that under [Rule] 4:37-2(b), and

that's the standard I'm using, that there's nothing in the case

to show any independent fraud or negligence of Emigrant."

 The court also dismissed Costa's claims against Emigrant

based on her theory that Merit Finance was Emigrant's agent. The

court found the language in the Emigrant — Merit Finance contract

to be dispositive. The court explained that "Merit can place a

loan with a lot of different banks, Merit is similar to the

insurance broker that I've talked about, so I don't think there's

any agency between Emigrant and Merit."

 Following the trial, Emigrant received the court's

authorization to proceed with the foreclosure action as a non-

contested case, and obtained a final foreclosure judgement.

 On appeal, Costa first argues the trial court erred in denying

her summary judgment motion based on the CFA and common law fraud

claims she asserted, through HOSA, against Emigrant. She asserts

the trial court grossly misconstrued HOSA, failed to recognize the

statute's plain meaning, and interpreted the statute in a manner

inconsistent with both its corresponding regulations and

legislative intent. In a lengthy dissertation on HOSA,

interspersed with misinterpretations of the trial court's opinion,

Costa disregards the twin underpinnings of the court's decision:

 12 A-4888-14T1
she never raised HOSA, and HOSA claims were barred by the

applicable statute of limitations.

 Emigrant argues that by the time it moved for summary

judgment, Costa knew she couldn't prove any wrongdoing by Emigrant,

so she changed course and asserted Emigrant was liable for Full

Spectrum's consumer fraud by virtue of HOSA. Emigrant asserts

"[t]he trial court rejected [Costa's] backdoor effort to assert a

new claim against Emigrant based on strict liability." It notes

the court held that Costa's assertion of a CFA claim based on a

violation of HOSA "was barred because [Costa] did not allege that

[Emigrant] violated [HOSA]." Lastly, Emigrant cites the trial

court's ruling "that any claim against [Emigrant] based on [HOSA]

was time barred."

 Although Costa's counterclaim and third-party complaint did

not specifically allege Emigrant was subject to liability for

fraud or consumer fraud committed by others under N.J.S.A. 46:10B-

27(a), it stated facts that established the elements of such a

cause of action. The statute provides:

 Notwithstanding any other law to the contrary,
 if a home loan was made, arranged, or assigned
 by a person selling either a manufactured
 home, or home improvements to the dwelling of
 a borrower, or was made by or through a
 creditor to whom the borrower was referred by
 such seller, the borrower may assert all
 affirmative claims and any defenses that the
 borrower may have against the seller or home-

 13 A-4888-14T1
 improvement contractor limited to amounts
 required to reduce or extinguish the
 borrower's liability under the home loan, plus
 the total amount paid by the borrower in
 connection with the transaction, plus amounts
 required to recover costs, including
 reasonable attorney’s fees against the
 creditor, any assignee or holder, in any
 capacity. (Emphasis added).

 Costa's counterclaim and third-party complaint contained

facts which, if proved, would establish that Full Spectrum, Merit

Finance, and Professional Abstract had committed fraud and

consumer fraud. Costa's pleading also alleged quite clearly that

Full Spectrum, the home improvement contractor, had arranged the

loan to Costa. Lastly, the pleading alleged Emigrant was the

creditor. These facts were clearly sufficient to trigger N.J.S.A.

46:10B-27(a).

 To be sure, Costa's attorney should have specifically

identified HOSA, as was done with the Truth in Lending and Truth

in Consumer Contract Warranty and Notice Acts. A prudent attorney

would have done so. Nonetheless, it is evident from the forged

Refinance Certification, printed on a document bearing Emigrant's

name and logo, that Emigrant was aware of HOSA. The Refinance

Certification provided were pre-printed statements for a mortgage

applicant to choose and certify. One choice contained a statement

that "no part of these additional funds will be used to finance a

 14 A-4888-14T1
home improvement to my (our) primary residence or other home owned

by me (us)." Another choice contained this language:

 No person or entity who is the seller or
 contractor for the home improvement or who is
 otherwise connected with the home improvement
 in any way . . . arranged for the loan applied
 for with Emigrant or referred me (us) to
 Emigrant in connection with this loan
 application, nor did any such Contractor
 inform me (us) of or suggest to me (us) the
 availability of financing with Emigrant. To
 the best of my (our) knowledge, neither
 Emigrant nor any broker involved in connection
 with this loan application is in any way
 involved in the home improvement or connected
 with any Contractor for the home improvement.

 Considering these circumstances, the strong legislative

policy declaration in N.J.S.A. 46:10B-23, and Emigrant's intent

to take Costa's home notwithstanding the provisions of HOSA, we

conclude Costa's pleadings provided notice to Emigrant that the

facts underlying Costa's claims triggered HOSA, such that the

claims should not have been dismissed.

 Nor can we conclude from the record the basis on which the

trial court determined HOSA's statute of limitations barred

Costa's claims against Emigrant. In view of our disposition of

the issue concerning the application of N.J.S.A. 46:10B-27(a), the

record on that issue requires further development.

 On the other hand, we reject Costa's argument that the judge

erred in denying her cross-motion for summary judgment. Given the

 15 A-4888-14T1
manner in which Costa apparently first elaborated on her HOSA

claim during motion practice, Emigrant may have had inadequate

time to develop the record on the issue. Not only that, but

Costa's reliance on N.J.S.A. 46:10B-27(a) without establishing a

substantive violation of HOSA, particularly under the

circumstances of this case, raises a host of potential legal and

factual issues that the trial court did not address. One such

argument is that which Emigrant raises as to whether HOSA applies

to Emigrant under the facts of this case, given that Full Spectrum

did not directly refer Emigrant to Costa. We leave these issues

to the trial court to resolve in the first instance on a record

developed accordingly.

 Turning to the dismissal of Costa's claims at trial, we

reverse as to Costa's theory that Professional Abstract was

Emigrant's agent. Professional Abstract and Emigrant had a written

contract specifically authorizing Professional Abstract to act as

Emigrant's agent. Emigrant explicitly instructed Professional

Abstract how to conduct the loan closing. Additionally, Emigrant

required that Professional Abstract use a closing services letter

in order to act as its settlement agent.

 The written contract between Professional Abstract and

Emigrant states in part: "ANY DEVIATION FROM THE INSTRUCTIONS OR

ALTERATIONS TO THE CLOSING DOCUMENTS MUST BE APPROVED IN WRITING

 16 A-4888-14T1
BY EMIGRANT MORTGAGE COMPANY'S CLOSING DEPARTMENT PRIOR TO

DISBURSEMENT." It further provides: "You are required to establish

the identity of all parties executing closing documents. Photo

identification such as a driver's license, passport, or employer

identification is required."

 The trial court did not analyze any of these facts before

granting Emigrant's motion for judgment at trial. Considered in

the light most favorable to Costa, these facts, "together with the

legitimate inferences therefrom, could sustain a judgment in

[Costa's] favor." R. 4:37-2(b). A jury could conclude from these

facts that Emigrant "consent[ed] to have [Professional Abstract]

act on its behalf, with [Emigrant,] the principal[,] controlling

and directing the acts of [Professional Abstract,] the agent."

Sears Mortg. Corp. v. Rose, 134 N.J. 326, 337 (1993).

 We have considered the parties' remaining arguments and found

them to be without sufficient merit to warrant further discussion

in a written opinion. R. 2:11-3(e)(1)(E).

 For the foregoing reasons, we reverse the trial court's order

barring Costa from asserting CFA and other claims through HOSA

against Emigrant. We also reverse that part of the order

dismissing at the close of Costa's trial proofs Costa's claims

against Emigrant based on an alleged agency relationship with

Professional Abstract. We affirm the denial of Costa's cross-

 17 A-4888-14T1
motion for summary judgment. Lastly, based on our decision

concerning Costa's claims through HOSA against Emigrant, we vacate

the judgment of foreclosure.

 We remand this matter to the trial court for further

proceedings consistent with this opinion. The trial court should

schedule a case management conference within forty-five days to

determine whether additional discovery is necessary in light of

our decision, and to schedule motion practice to dispose of all

legal issues concerning HOSA and any other legal issues not

previously addressed by the trial court; including any statute of

limitations argument with respect to the HOSA claims. The parties

should not construe this opinion as expressing any comment on how

Costa's claims should ultimately be resolved or decided.

 Affirmed in part, reversed in part, and remanded for further

proceedings consistent with this opinion. We do not retain

jurisdiction.

 18 A-4888-14T1